1  John T. Jasnoch (CA 281605)
   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
2  600 W. Broadway, Suite 3300
   San Diego, CA 92101
3  Tel.: (619) 233-4565
4  Fax: (619) 233-0508
   jjasnoch@scott-scott.com
5
   *Counsel for Plaintiff Angelo Rondini*
6  *and the Proposed Class*

7  [Additional counsel on signature page.]

8
              **UNITED STATES DISTRICT COURT**
9              **NORTHERN DISTRICT OF CALIFORNIA**

10 | ANGELO RONDINI, Individually and on | Case No. _____
   | Behalf of All Others Similarly Situated, |
11 |                                          |
   |                 Plaintiff,               |
12 |                                          | **CLASS ACTION COMPLAINT**
   |        v.                                |
13 |                                          |
   | KYVERNA THERAPEUTICS, INC., J.P.         |
14 | MORGAN SECURITIES LLC, MORGAN            |
   | STANLEY & CO. LLC, LEERINK               |
15 | PARTNERS LLC, WELLS FARGO                | <u>**JURY TRIAL DEMANDED**</u>
   | SECURITIES, LLC, PETER MAAG, RYAN        |
16 | JONES, DOMINIC BORIE, JAMES CHUNG,       |
   | KAREN WALKER, IAN CLARK, FRED E.         |
17 | COHEN, BRIAN KOTZIN, STEVE LIAPIS,       |
   | BETH SEIDENBERG, and DANIEL K.           |
18 | SPIEGELMAN,                              |
19 |                 Defendants.              |

CLASS ACTION COMPLAINT

Plaintiff Angelo Rondini ("Plaintiff") makes the following allegations, individually and on behalf of all others similarly situated, by and through Plaintiff's counsel, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of: (i) regulatory filings made by Kyverna Therapeutics, Inc. ("Kyverna" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this federal class action under §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") against (i) Kyverna, (ii) certain of the Company's senior executives and directors who signed the Registration Statement, effective February 7, 2024, issued in connection with the Company's initial public offering (the "IPO" or the "Offering"), and the underwriters of the Offering. Plaintiff alleges that the Registration Statement and Prospectus (filed with the SEC on January 16, 2024, and February 8, 2024, respectively), including all amendments thereto (collectively, the "Offering Documents"), contained materially incorrect or misleading statements and/or omitted material information that was required by law to be disclosed. Defendants are each strictly liable for such misstatements and omissions therefrom (subject only to their ability to establish an affirmative defense) and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, and/or offeror of the shares sold pursuant to the Offering.

2. Kyverna, headquartered in Emeryville, California, is a clinical-stage biopharmaceutical company focused on developing cell therapies for patients suffering from autoimmune diseases. The Company's cell therapy approach to treating autoimmune diseases focuses on multiple autoimmune case studies using CD19 chimeric antigen receptor ("CAR") T-cell treatment, a type of immunotherapy that genetically modifies T cells, which are a type of white

1  blood cell called lymphocytes, to target CD19 on the surface of malignant B cells, another
2  lymphocyte.

3       3.     The Company's lead product candidate is KYV-101. The Company maintains,
4  among others, a clinical development program for KYV-101 studying lupus nephritis ("LN"), a
5  kidney disease that commonly develops in patients with systemic lupus erythematosus ("SLE" or
6  "lupus"). The Company initiated two clinical trials of KYV-101, KYSA-1 (NCT05938725) and
7  KYSA-3 (NCT06342960), respectively, to evaluate, among other things, the incidence of adverse
8  events and laboratory abnormalities, the frequency of dose-limiting toxicities, efficacy, and
9  immunogenicity (the ability of a substance to cause an immune response in an organism). As
10 sponsor of the trials, Kyverna monitors and receives data from trial particiapnts in an ongoing
11 basis.

12       4.     On or about February 8, 2024, Kyverna conducted its IPO, offering 14.5 million
13 shares of its common stock to the public at a price of $22 per share (the "Offering Price") for
14 anticipated proceeds of over $296 million. Kyverna granted the Underwriter Defendants (defined
15 herein) a 30-day option to purchase up to an additional 2.175 million shares of its common stock
16 at the Offering Price, less underwriting discounts and commissions.

17       5.     According to the Offering Documents, "[i]n early results available as of
18 December 31, 2023, from the first two adult patients enrolled in our KYSA-1 LN trial and from
19 the first adult patient enrolled in our KYSA-3 LN trial, we observed improvement in" urine protein
20 creatinine ratio ("UPCR"), which measures certain indicators of lupus found in urine.

21       6.     Unbeknownst to investors, however, these representations (and others discussed
22 herein) were materially inaccurate, misleading, and/or incomplete because they did not disclose
23 adverse data regarding one of Kyverna's trials, which adverse data was known to the Company at
24 the time of the IPO.

25       7.     As these true facts emerged after the Offering, the Company's shares fell sharply,
26 severely harming investors. By the commencement of this action, Kyverna's shares traded as low
27 as $3.92 per share, a decline of more than 82% from the Offering Price.

28

8. By this action, Plaintiff, on behalf of himself and other members of the Class (defined below), who also acquired Kyverna's shares pursuant and traceable to the Offering, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

9. The claims asserted herein are purely strict liability and negligence claims. Plaintiff expressly eschews any allegation sounding in fraud.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77*l*(a)(2), and 77o, respectively.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act, 15 U.S.C. §77v.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, including the dissemination of false and misleading statements into this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

**A.     Plaintiff**

14. Plaintiff, as set forth in his accompanying certification, purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and Offering, and was damaged thereby.

B.  **Defendants**

   1.  **The Company**

15.    Defendant Kyverna is an Emeryville, California-based, clinical-stage biopharmaceutical company focused on developing cell therapies for patients suffering from autoimmune diseases. Incorporated under the laws of the state of Delaware, Kyverna maintains its principle executive offices at 5980 Horton Street, STE 550, Emeryville, California 94608. Kyverna's common stock is listed on the NASDAQ under the ticker symbol "KYTX."

   2.  **The Individual Defendants**

16.    Defendant Peter Maag ("Maag") was, at all relevant times, Chief Executive Officer ("CEO"), and a director on the Board of Directors (the "Board") of Kyverna. Defendant Maag reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

17.    Defendant Ryan Jones ("Jones") is, and was at all relevant times, Kyverna's Chief Financial Officer ("CFO"). Defendant Jones reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

18.    Defendant Dominic Borie ("Borie") is, and was at all relevant times, Kyverna's President, Research and Development. Defendant Borie reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

19.    Defendant James Chung ("Chung") is, and was at all relevant times, Kyverna's Chief Medical Officer ("CMO"). Defendant Chung reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

20.    Defendant Karen Walker ("Walker") is, and was at all relevant times, Kyverna's Chief Technology Officer ("CTO"). Defendant Walker reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

21.    Defendant Ian Clark ("Clark") is, and was at all relevant times, a director on, and Chairperson of, the Board. Defendant Clark reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

22. Defendant Fred E. Cohen ("Cohen") is, and was at all relevant times, a director on the Board. Defendant Cohen reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

23. Defendant Brian Kotzin ("Kotzin") is, and was at all relevant times, a director on the Board. Defendant Kotzin reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

24. Defendant Steve Liapis ("Liapis") is, and was at all relevant times, a director on the Board. Defendant Liapis reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

25. Defendant Beth Seidenberg ("Seidenberg") is, and was at all relevant times, a director on the Board. Defendant Seidenberg reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

26. Defendant Daniel K. Spiegelman ("Spiegelman") is, and was at all relevant times, a director on the Board. Defendant Spiegelman reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

27. Defendants Maag, Jones, Borie, Chung, Walker, Clark, Cohen, Kotzin, Liapis, Seidenberg, and Spiegelman are collectively referred to herein as the "Individual Defendants."

### 3. The Underwriter Defendants

28. The Underwriter Defendants were also instrumental in soliciting investors and in making the Kyverna shares that were offered, and sold in or traceable to the IPO, available to Plaintiff and the other members of the Class. The table below lists each of the Underwriter Defendants, together with the number of allotted shares that each sold in the IPO:

| Name | Number of Shares |
|---|---|
| J.P. Morgan Securities LLC | 5,292,000 |
| Morgan Stanley & Co. LLC | 4,857,500 |
| Leerink Partners LLC | 2,900,000 |
| Wells Fargo Securities, LLC | 1,450,000 |

29. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and

dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents. J.P. Morgan also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. J.P. Morgan's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests. Defendant J.P. Morgan conducts business in this District.

30. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents. Morgan Stanley also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Morgan Stanley's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests. Defendant Morgan Stanley conducts business in this District.

31. Defendant Leerink Partners LLC ("Leerink") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents. Leerink participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Leerink's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests. Defendant Leerink conducts business in this District.

32. Defendant Wells Fargo Securities, LLC ("Wells Fargo") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents. Wells Fargo participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Wells Fargo's participation in and its solicitation of

offers in connection with the IPO was motivated by its financial interests.  Defendant Wells Fargo conducts business in this District.

33. Defendants listed in ¶¶29-32 are collectively referred to herein as the "Underwriter Defendants."

34. Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.  In addition, although not an element of Plaintiff's claims and an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense, no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.  Each Underwriter Defendant committed acts and omissions that were a substantial factor leading to the harm complained of herein.

35. Each Underwriter Defendant named herein is an investment banking firm whose activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters of the IPO, the Underwriter Defendants earned lucrative underwriting fees.

36. As underwriters, the Underwriter Defendants met with potential investors in the IPO and presented highly favorable, but materially incorrect and/or materially misleading, information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

37. Representatives of the Underwriter Defendants also assisted Kyverna and the Individual Defendants in planning the IPO.  They further purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

38. In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Kyverna's management,

directors, and lawyers to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Kyverna's common stock would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about Kyverna would be made in the Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the Offering Documents. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Kyverna's management, directors, and lawyers, at a minimum, the Underwriter Defendants should have known of Kyverna's undisclosed then-existing problems and plans, and the Offering Document's materially inaccurate, misleading, and incomplete statements and omissions, as detailed herein.

39. The Underwriter Defendants also demanded and obtained an agreement from Kyverna under which Kyverna agreed to indemnify and hold the Underwriter Defendants harmless from any liability under the Securities Act.

40. The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the IPO, so that they, and the Individual Defendants, could offer to sell, and sell, Kyverna shares to Plaintiff and other members of the Class pursuant (or traceable) to the Offering Documents.

**SUBSTANTIVE ALLEGATIONS**

**A.  Kyverna's Initial Public Offering and False and/or Misleading Offering Documents**

41. On October 5, 2023, Kyverna filed with the SEC a draft Registration Statement on Form S-1, which, following an amendment, would be used for the IPO in response to SEC comments. On February 6, 2024, Kyverna filed an amendment to the Registration Statement, which registered 14.5 million Kyverna shares for public sale, including 2.175 million shares that the Underwriter Defendants had the option to purchase, solely to cover over-allotments. The SEC declared the Registration Statement effective on February 7, 2024. On February 8, 2024, Defendants priced the IPO at $22 per share and filed the final Prospectus for the IPO, which forms part of the Registration Statement.

42. The Offering Documents were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements

1  made not misleading, and were not prepared in accordance with the rules and regulations
2  governing their preparation.

3　　　　43.　According to the Offering Documents, "[i]n early results available as of December
4  31, 2023, from the first two adult patients enrolled in our KYSA-1 LN trial and from the first adult
5  patient enrolled in our KYSA-3 LN trial, we observed improvement in UPCR."

6　　　　44.　This statement, as well as others, was false and misleading because Kyverna
7  disclosed incomplete data. Specifically, Kyverna failed to disclose adverse data it possessed
8  related to one of its trials.

9　　　　45.　Additionally, Defendants were required to disclose this material information in the
10 Offering Documents for at least two other independent reasons.  *First*, SEC Regulation S-K, 17
11 C.F.R. §229.303 (Item 303), required disclosure of any known events or uncertainties that at the
12 time of the Offering had caused, or were reasonably likely to cause, Kyverna's disclosed financial
13 information not to be indicative of future operating results.  At the time of the Offering, Kyverna
14 possessed critical information that was not disclosed: the Company knew that it possessed adverse
15 data regarding one of its clinical trials.  These undisclosed adverse data were likely to (and in fact,
16 did) materially and adversely affect Kyverna's lead product and rendered the disclosed results and
17 trends in the Offering Documents false, misleading, and not indicative of the Company's future
18 operating results.

19　　　　46.　*Second*, SEC Regulation S-K, 17 C.F.R. §229.105 (Item 105), required, in the "Risk
20 Factor" section of the Offering Documents, a discussion of the most significant factors that make
21 the Offering risky or speculative, and that each risk factor adequately describe the risk.  Kyverna's
22 discussion of risk factors did not adequately describe the risk posed by the Company's withholding
23 of adverse data regarding one of its clinical trials, nor the other already occurring negative results
24 and trends, nor the likely and consequent materially adverse effects on the Company's future
25 results, share price, and prospects.

26　　　　**B.**　　**Events and Disclosures Following the Offering**

27　　　　47.　On June 14, 2024, Kyverna hosted an industry symposium at the European Alliance
28 of Associations for Rheumatology ("EULAR") in Vienna and provided an update on KYV-101.

1   On the same day, the Company published an investor presentation that disclosed adverse data
2   regarding one of its clinical trials. Kyverna's failure to disclose this adverse data at the time of the
3   IPO severely harmed investors.

4   48.     By the time this case was filed, the Company's stock traded as low as $3.92 per
5   share, or more than 82% below the $22 IPO Offering Price.



## CLASS ACTION ALLEGATIONS

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Kyverna common stock issued in connection with the Company's IPO.

51.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Kyverna, members of the Kyverna's Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Kyverna.

52.     The members of the Class are so numerous that joinder of all members is impracticable. The Company's common stock was actively traded on the NASDAQ, a national securities exchange. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the Class. During the relevant time, millions of Kyverna

shares were publicly traded on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Kyverna or its transfer agent and may be notified of the pendency of this action by mail or electronic means, using a form of notice similar to that customarily used in securities class actions.

53. Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendants' wrongful conduct in violation of the federal securities laws. Further, Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class and securities litigation.

54. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the members of the Class are:

    (a) whether Defendants violated the Securities Act;

    (b) whether statements made by Defendants to the investing public misrepresented material facts about the business, operations, and prospects of Kyverna;

    (c) whether statements made by Defendants to the investing public omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (d) the extent of damage sustained by Class members and the appropriate measure of damages.

55. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, because joinder of all members is impracticable. Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIM ONE

### For Violations of §11 of the Securities Act
### (Against All Defendants)

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57. This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants. This is a non-fraud cause of action. Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

58. The Offering Documents were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

59. The Company is the registrant of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate. By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Kyverna is liable under §11 of the Securities Act to Plaintiff and the Class.

60. The Individual Defendants each signed the Offering Documents and caused its issuance. As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have

known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable under §11 of the Securities Act to Plaintiff and the Class.

61. The Underwriter Defendants each served as underwriters in connection with the IPO. As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents. They had a duty to ensure that such statements were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable under §11 of the Securities Act to Plaintiff and the Class.

62. Defendants acted negligently in preparing the Offering Documents. None of the Defendants named in this claim made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omission of any material facts and were not misleading. In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

63. By reasons of the conduct herein alleged, each Defendant named in this claim violated §11 of the Securities Act.

64. None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement. Rather, each such statement concerned then-existing facts. Moreover, the Offering Documents did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

65. Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the untruths and/or omissions alleged herein. Plaintiff sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Documents.

66. This claim is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

67. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## CLAIM TWO

### For Violations of §12(a) of the Securities Act
### (Against All Defendants)

68. Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

69. By means of the defective Prospectus, Defendants promoted, solicited, and sold Kyverna shares to Plaintiff and other members of the Class.

70. The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff, and the other members of the Class who purchased Kyverna shares pursuant to the Prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus, as set forth above.

71. Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Kyverna shares.

72. By reason of the conduct alleged herein, Defendants violated §12(a)(2), 15 U.S.C. §77*l*(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Kyverna securities, pursuant to the Prospectus, sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold Kyverna securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their Kyverna shares to Defendants sued herein. Class members who have sold their Kyverna securities seek damages to the extent permitted by law.

## CLAIM THREE

**For Violations of §15 of the Securities Act**
**(Against the Individual Defendants)**

73. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74. This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Individual Defendants.

75. The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act. By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised same over, the Company to cause it to engage in the conduct complained of herein. Similarly, each of the other Individual Defendants not only controlled those subject to liability as primary violators of §11 of the Securities Act, as alleged above, they directly participated in controlling Kyverna by having signed, or authorized the signing of, the Registration Statement and authorizing the issuance of Kyverna securities to Plaintiff and members of the Class.

76. As control persons of Kyverna, each of the Individual Defendants are jointly and severally liable pursuant to §15 of the Securities Act with, and to, the same extent as Kyverna for its violations of §11 of the Securities Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for relief and judgement as follows:

A.  Declaring that this action is a proper class action, pursuant to Fed. R. Civ. P. 23, certifying Plaintiff as a representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.  Awarding Plaintiff and the other members of the Class compensatory damages;

C.  Awarding Plaintiff and the other members of the Class rescission and/or rescissionary damages on their §12(a)(2) claims;

D.  Awarding Plaintiff and the other members of the Class pre-judgment and postjudgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.  Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues that may be so tried.

DATED: December 9, 2024

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 s/ John T. Jasnoch
John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
jjasnoch@scott-scott.com

Thomas L. Laughlin, IV
(*pro hac vice* forthcoming)
Nicholas S. Bruno
(*pro hac vice* forthcoming)
Matthew A. Peller
(*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169

Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
nbruno@scott-scott.com
mpeller@scott-scott.com

*Counsel for Plaintiff Angelo Rondini and the Proposed Class*

Brian J. Schall
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel:  310-301-3335
Fax: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Plaintiff Angelo Rondini and the Proposed Class*

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

1. I, Angelo Rondini, make this declaration pursuant to §27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or §21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a complaint against Kyverna Therapeutics, Inc. ("Kyverna" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Kyverna securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Kyverna securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. The attached sheet (Schedule "A") lists all of my transactions in Kyverna securities during the Class Period, as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct this day of 12/7/2024 .

Signed by:
*ANGELO RONDINI*
Angelo Rondini

# Schedule A

**KYVERNA THERAPEUTICS INC**     **Ticker:** **KYTX**     **Cusip:** 501976104

**Angelo Rondini**

|  | DATE | SHARES | PRICE |
|---|---|---|---|
| **Purchases:** | 6/6/2024 | 200 | $14.45 |