EDWARD HAN (SB# 196924)
edwardhan@paulhastings.com
CHRISTOPHER HAROLD MCGRATH (SB# 149129)
chrismcgrath@paulhastings.com
BRIAN SEARLES KAEWERT (SB# 305140)
briankaewert@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone:    (650) 320-1800
Facsimile:    (650) 320-1900

*Attorneys for Defendants*
*Kyverna Therapeutics, Inc., Ian Clark, Fred E. Cohen,*
*Brian Kotzin, Steve Liapis, Beth Seidenberg, Daniel K.*
*Spiegelman, Ryan Jones, Dominic Borie, Karen Walker,*
*Peter Maag, and James Chung*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ANGELO RONDINI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KYVERNA THERAPEUTICS, INC., J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, LEERINK PARTNERS LLC, WELLS FARGO SECURITIES, LLC, PETER MAAG, RYAN JONES, DOMINIC BORIE, JAMES CHUNG, KAREN WALKER, IAN CLARK, FRED E. COHEN, BRIAN KOTZIN, STEVE LIAPIS, BETH SEIDENBERG, and DANIEL K. SPIEGELMAN,<br><br>Defendants. | CASE NO. 5:24-cv-08869-PCP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:    Hon. P. Casey Pitts<br>Date:     December 11, 2025<br>Time:     10:00 a.m.<br>Ctrm:     8 |

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 2

II.   Summary of Relevant Factual Allegations ........................................................... 3

III.  Legal Standard ..................................................................................................... 6

IV.   The Motion To Dismiss Should Be Granted.......................................................... 7

   A.   Plaintiff Lacks Standing To Assert A Section 12(a)(2) Claim ............................ 7

   B.   The Section 11 Claim Sounds In Fraud And Is Insufficiently Pled...................... 8

      i.    Section 11 Claims Sounding In Fraud Must Be Pled With Particularity......................... 8

      ii.   Plaintiff Does Not Meet Rule 9(b)'s Pleading Standards ................................... 9

   C.   Plaintiff's Puzzle Pleading Dooms His Entire Complaint ..................................... 10

   D.   Defendants Cannot Be Liable For Accurately Reporting Information .............................. 11

   E.   Plaintiff's Confidential Witnesses Do Not Establish Falsity ................................ 13

   F.   Defendants Did Not Fail To Disclose Information Required By SEC Regulations .......... 16

      i.    Plaintiff Fails To State A Claim For Violation Of Item 303........................................... 16

      ii.   Plaintiff Fails To State A Claim For Violation Of Item 105.......................................... 17

   G.   Without an Underlying Violation, No Section 15 Liability Attaches.............................. 20

V.    Conclusion ........................................................................................................... 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd* 561 F. App'x 598 (9th Cir. 2014) .................. 14

*In re Aqua Metals, Inc. Sec. Litig.*,
No. 17-cv-07142-HSG, 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ................................. 10

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
782 F. App'x 572 (9th Cir. 2019) ........................................................................................ 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 6

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
No. 07 Civ. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ........................................... 17

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .................................................................................................. 7

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .................................................................................... 8

*In re Cisco Sys. Inc. Sec. Litig.*,
No. C 11-1568 SBA, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ............................... 10, 11

*In re Downey Sec. Litig.*,
No. CV 08-3261-JFW(RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........................ 14

*In re Dropbox Sec. Litig.*,
No. 19-cv-06348-BLF, 2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) .................................. 11

*Fisher v. Acuson Corp.*,
No. C93-20477RMW(EAI), 1995 WL 261439 (N.D. Cal. Apr. 26, 1995) ........................... 12

*Golubowski v. Robinhood Mkts., Inc.*,
No. 21-cv-09767-EMC, 2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) ................................ 17

*Greenberg v. Sunrun Inc.*,
233 F. Supp. 3d 764 (N.D. Cal. 2017) ..................................................................................... 7

*Huang v. Higgins*,
No. 17-cv-04830-JST, 2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) .................................. 16

*Jedrzejczyk v. Skillz Inc.*,
No. 21-cv-03450-RS, 2022 WL 2441563 (N.D. Cal. July 5, 2022) ........................................ 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)......................................................................................... 6

*Kipling v. Flex Ltd.*,
    No. 18-CV-02706-LHK, 2020 WL 2793463 (N.D. Cal. May 29, 2020) ............................. 14

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008)......................................................................................... 6

*Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...................................................................... 10, 11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................................. 7, 13

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019) ......................................................................... 15

*Monachelli v. Hortonworks, Inc.*,
    225 F. Supp. 3d 1045 (N.D. Cal. 2016) .......................................................................... 11

*In re Nektar Therapeutics*,
    No. 18-cv-06607-HSG, 2020 WL 3962004 (N.D. Cal. July 13, 2020) ................................. 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)...................................................................................................... 7

*In re Orange 21 Inc. Sec. Litig.*,
    No. 05 CV 0595 JM (BLM), 2006 WL 8455352 (S.D. Cal Mar. 30, 2006)............................ 9

*Padnes v. Scios Nova Inc.*,
    No C 95-1693 MHP, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996)...................................... 12

*In re Pivotal Sec. Litig.*,
    No. 3:19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020) ......................... 7, 17

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ......................................................................... 7, 10

*In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal 2019) ........................................................................... 17

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)................................................................................ 8, 13, 20

*Sgarlata v. Paypal Holdings, Inc.*,
    409 F. Supp. 3d 846 (N.D. Cal. 2019), *aff'd sub nom. Eckert v. Paypal
    Holdings, Inc.,* 831 F. App'x 366 (9th Cir. 2020)................................................................ 15

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996)............................................................................................ 8

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998).......................................................................................... 17

*Wang v. Zymergen Inc.*,
  744 F. Supp. 3d 995 (Pitts, J.) (N.D. Cal. 2024), *mot. to certify denied*, 759 F.
  Supp. 3d 1002 (N.D. Cal. 2024) ........................................................................................ 6

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) ............................................................................... 7

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)............................................................................... 13, 14, 15

**Statutes**

15 U.S.C. § 77k(a) ................................................................................................................ 7

15 U.S.C. § 77l(a)(2)............................................................................................................ 7

Securities Act of 1933 ..................................................................................................*passim*

**Other Authorities**

17 C.F.R. § 229.105 ..................................................................................................... 3, 17

17 C.F.R. § 229.303 ............................................................................................... 3, 16, 17

17 C.F.R. § 229.303(b)(2)(ii).......................................................................................... 17

21 C.F.R. § 312.32(a)...................................................................................................... 13

Federal Rule of Civil Procedure 8.................................................................................. 6, 11

Federal Rule of Civil Procedure 9(b) ...................................................................... 2, 8, 9, 10

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

## NOTICE OF MOTION AND MOTION

TO THE ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 11, 2025 at 10:00 a.m., or as soon thereafter as this motion may be heard before the Honorable P. Casey Pitts, United States District Judge for the Northern District of California, Defendants Kyverna Therapeutics, Inc. ("Kyverna"), Ian Clark, Fred E. Cohen, Brian Kotzin, Steve Liapis, Beth Seidenberg, Daniel K. Spiegelman, Ryan Jones, Dominic Borie, Karen Walker, Peter Maag, and James Chung (collectively, "Kyverna Defendants") will, and hereby do, move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Lead Plaintiff Clement Matthys' Amended Class Action Complaint (the "Complaint" or "Compl.") in its entirety with prejudice.[1]  This Motion is based on the pleadings on file in this action; the Memorandum of Points and Authorities herein; the accompanying Request for Judicial Notice; the accompanying Declaration of Brian Kaewert and exhibits attached thereto; and any other matter which may be submitted at the hearing.

## STATEMENT OF RELIEF SOUGHT

The Kyverna Defendants seek dismissal of the entire Complaint on the basis that Plaintiff fails to state any legally cognizable cause of action therein.

## STATEMENT OF ISSUES

1.      Does the Complaint adequately allege any violation of Section 11 of the Securities Act of 1933 ("Section 11")?

2.      Does the Complaint adequately allege any violation of Section 12(a)(2) of the Securities Act of 1933 ("Section 12(a)(2)")?

3.      Does the Complaint adequately allege any violation of Section 15 of the Securities Act of 1933 ("Section 15")?

---

[1] Defendants J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Leerink Partners LLC, and Wells Fargo Securities, LLC, who are collectively referred to with the Kyverna Defendants as "Defendants," are filing a joinder to this motion.

- 1 -

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION

Plaintiff attempts to plead violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 by alleging that Defendants failed to disclose all material facts regarding certain clinical trials in the Offering Documents.  But rather than providing well-pleaded facts that would establish liability for Defendants under the securities laws for any purported misrepresentations in the Kyverna Offering Documents,[2] Plaintiff instead attempts to manufacture a hindsight claim by cutting and pasting into the Complaint numerous paragraphs and charts of clinical trials (all of which present accurate historical data), and then focusing on a single allegedly adverse result disclosed four months after Kyverna's initial public offering ("IPO") as proof of securities fraud. That position, however, is reliant on Plaintiff's fundamental misunderstanding of how clinical trials work and a blatant mischaracterization of the specific clinical trial at issue in this case. Quite simply, there was no "adverse information" before the time of Kyverna's IPO in February 2024 that could have been reported in the Offering Documents.  Moreover, Plaintiff ignores the substantial risk disclosures provided by Kyverna that specifically and explicitly referenced the potential for the supposed negative results upon which the Complaint is premised.  As demonstrated below, Plaintiff fails to state a legally cognizable claim for multiple independently sufficient reasons.

*First*, as a threshold matter, Plaintiff lacks standing to bring any claim pursuant to Section 12(a)(2), as he did not purchase his shares in the IPO (a requirement for a Section 12(a)(2) claim).

*Second*, while Plaintiff nominally disclaims any allegations of fraud, the conduct he alleges sounds in fraud and, as such, the more stringent pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") apply to his claims.  But Plaintiff fails to plead falsity with the particularity required under Rule 9(b).

*Third*, Plaintiff's puzzle-pled Complaint includes large blocks of text from Kyverna's Offering Documents without identifying which, if any, statements therein Plaintiff alleges are

---

[2] Collectively, Kyverna's February 6, 2024 Amendment to the Registration Statement (the "Amended Registration Statement") and Kyverna's February 8, 2024 Prospectus (the "Prospectus") are referred to as the "Offering Documents."

- 2 -

false or misleading. Defendants are entitled to know exactly which statements Plaintiff alleges form the basis of his claim.

*Fourth*, Plaintiff attempts to hold Defendants liable for accurate reporting of historical data. As a matter of law, however, Defendants cannot be held liable for only accurately reporting such information.

*Fifth*, Plaintiff's attempts to rely on statements from purported former Kyverna employees are misplaced. Plaintiff does not plead facts sufficient to render these former employees' statements reliable and these purported former employees do not allege information sufficient to establish either that any omitted clinical data was actually known or available to Defendants or that such alleged omissions were actually adverse.

*Sixth*, Plaintiff's attempts to plead violations of SEC regulations (specifically Regulation S-K, 17 C.F.R. § 229.303 ("Item 303") and Regulation S-K, 17 C.F.R. § 229.105 ("Item 105")) fall short. Item 303 requires an adverse trend, but Plaintiff has not pleaded that any adverse trend arose prior to the issuance of the Offering Documents. As for Item 105, Plaintiff ignores that Defendants provided nearly 70 pages of risk disclosures, including disclosures that warned of the precise clinical trial risk of which Plaintiff now complains.

*Finally*, because Plaintiff has failed to support a primary violation of the Securities Act of 1933, the Individual Defendants cannot be held liable for violations of Section 15 thereunder.

Simply put, the Complaint does not include allegations sufficient to assert any claim against any Defendant and must be dismissed.

## II.     SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

Kyverna is a patient-centered, clinical-stage biopharmaceutical company working to develop certain cell therapy treatments for patients suffering from auto-immune diseases. Compl. ¶ 2. Kyverna's goal with its lead product candidate, KYV-101, is to bring disease-modifying therapeutic benefits to patients suffering from these autoimmune diseases, including lupus nephritis ("LN"), systemic sclerosis ("SSc"), stiff person syndrome ("SPS"), myasthenia gravis ("MG"), and multiple sclerosis ("MS"). In addition, Kyverna worked to develop an allogeneic, off-the-shelf product, KYV-201, to treat other autoimmune diseases. To help support its

- 3 -

development of these therapeutic medicines, Kyverna conducted its IPO on February 8, 2024. *Id.* ¶¶ 1, 5. In connection with the IPO, Kyverna filed a Registration Statement on January 16, 2024, Amendment to the Registration Statement on February 6, 2024, and a Prospectus on February 8, 2024.[3] *Id.*

Prior to the IPO, Kyverna had received FDA approval to test KYV-101 on patients with LN. *Id.* ¶ 3. Kyverna stated in the Offering Documents that KYV-101 "offer[ed] potential long term benefits" for patients with LN. *Id.* At the time of the IPO, Kyverna had two early stage clinical trials for KYV-101 in progress. *Id.* at 4. Both trials were in their infancy at the time of the IPO, with a total of three enrolled and treated patients. *Id.* Eleven additional patients had been dosed with KYV-101 in investigator-initiated trials and/or named patient activities treating diseases such as SPS, MG, and MS.[4] *See* Prospectus, Kaewert Decl., Ex. C at 135-140.

In the Offering Documents, Kyverna provided clinical trial data "available as of December 31, 2023" for the three patients then enrolled and treated in the KYV-101 trials. *Id.* at 6. Specifically, Kyverna provided charts of patient data for four key markers. Compl. ¶¶ 47, 57. The early results reflected generally positive initial results for these markers in each of the three patients. *Id.* ¶¶ 58-63. The Offering Documents disclosed that, one patient (referred to by Plaintiff as "Patient 1"), who was on sub-therapeutic dosage protocol and received "***half of the target dose***" of KYV-101 (Compl. ¶ 75 (emphasis added)), "discontinued use of immunosuppressant therapy except 10 mg prednisone, which was discontinued on day 31." Prospectus, Kaewert Decl., Ex. C at 133; *see also* Compl. ¶ 59. Such a protocol assists in determining dosage levels of KYV-101 to administer to patients.

In addition, the Offering Documents contained extensive risk disclosures. Compl. ¶ 91;

---

[3] A copy of the Registration Statement is attached as Exhibit A to the Declaration of Brian S. Kaewert ("Kaewert Decl."), a copy of the Amended Registration Statement is attached as Exhibit B to the Kaewert Decl., and a copy of the Prospectus is attached as Exhibit C to the Kaewert Decl. As these documents are heavily relied upon by Plaintiff in the Complaint, the Kyverna Defendants request that the Court take judicial notice of these documents. *See* Request for Judicial Notice filed concurrently herewith.

[4] Plaintiff tries to make much of the fact that KYV-101 was in trials for patients with LN and not other indications. Compl. ¶¶ 3-4, 43-46, n.2. However, Plaintiff ignores that Kyverna clearly disclosed that it had received FDA approval for Phase II clinical trials of KYV-101 for multiple other uses. *See* Amended Registration Statement, Kaewert Decl., Ex. B at 137 (KYSA-5 trial for SSc), 140 (KYSA-6 trial for MG), 141 (KYSA-7 trial for MS).

- 4 -

Amended Registration Statement, Kaewert Decl., Ex. B at 16-85; Prospectus, Kaewert Decl., Ex. C at 16-85. These disclosures warned that, among other risks, the "risk of failure is high" for all of Kyverna's product candidates and that the "results of preclinical studies and early clinical trials of our product candidates may not be predictive of the results of later-stage clinical trials." Prospectus, Kaewert Decl., Ex. C at 30, 35-36.

Later clinical results from Patient 1 (who, again, only "received half of the target dose") reflected a recurrence and "she was placed back on immunosuppressants" which Kyverna disclosed on June 14, 2024. Compl. ¶¶ 73, 75, 77. Based on the purported allegations of three supposed *former* Kyverna employees, Plaintiff alleges in conclusory fashion that "less positive" clinical data about Patient 1 was "known or available" to Kyverna before the IPO. *Id.* ¶¶ 73, 87-88. But none of these former employees are alleged to have direct knowledge that any adverse clinical data had actually been *validated* by Kyverna before the IPO. *See id.* ¶¶ 68-69, 72. Indeed, Plaintiff's allegations on this matter ignore how clinical studies are conducted – even after data is collected, a company must take the time to validate the data to ensure its accuracy before making any disclosures to the public. *See, e.g.*, Prospectus, Kaewert Decl., Ex. C at 70 ("[T]he FDA and comparable foreign regulatory authorities require us to comply with GCPs [*i.e.*, Good Clinical Practices] for conducting, recording and reporting the results of clinical trials to assure that data and reported results are credible and accurate . . . ."); *id.* at 33 ("Top-line data also remain subject to audit and verification procedures . . . ."); U.S. Department of Health and Human Services, E6(R2) Good Clinical Practice: Integrated Addendum to ICH E6(R1) Guidance for Industry ("GCP"), § 5.1.3, https://www.fda.gov/media/93884/download ("Quality control should be applied to each stage of data handling to ensure that all data are reliable and have been processed correctly.").

Following the June 2024 disclosure, Kyverna's stock price declined from $14.44 on June 13, 2024 to $7.89 on June 17, 2024. Compl. ¶ 82. And while Plaintiff suggests that an analyst at J.P. Morgan believed that these clinical trial results warranted the drop in stock price, *see id.*, the reality is that Plaintiff selectively omitted key portions of this J.P. Morgan analyst report that show that J.P. Morgan viewed the drop in stock price as an overreaction. *See* Analyst Report,

- 5 -

Kaewert Decl., Ex. D ("Overall, **we believe the weakness in KYTX shares today is an overreaction centered around disease reoccurrence in one lupus patient who was treated with a _sub-therapeutic dose_ (that was 2x lower than the standard 100nm dose).**" (emphasis in original)).  Moreover, Kyverna's stock did not stay down; by July 16, 2024—one month *after* the June 2024 disclosure—Kyverna was once again trading above $11.00 per share.  *See* Kaewert Decl., Ex. E.  Plaintiff, who does not allege that he purchased any Kyverna shares in the IPO but instead purchased the great majority of his Kyverna stock **after** disclosure of the purportedly omitted facts, now seeks to hold Defendants liable under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 for failing to disclose allegedly known adverse data.  *See* Compl. ¶ 82; ECF No. 21-2 at 3.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8 ("Rule 8"), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although it must accept well-pleaded allegations as true on a motion to dismiss, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).  In addition to the Complaint, the Court may also consider "contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *see also Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1005-06 (Pitts, J.) (N.D. Cal. 2024) ("the doctrine of incorporation by reference permits a court to treat an extrinsic document as if it were part of the complaint if the pleading 'refers extensively to the document' or if 'the document forms the basis' of a claim." (quoting *Khoja,* 899 F.3d at 1002)), *mot. to certify denied*, 759 F. Supp. 3d 1002 (N.D. Cal. 2024).

In order to properly plead a violation of Section 11 or Section 12(a)(2), Plaintiff must state sufficient facts to establish that the Offering Documents contain "an untrue statement of a

material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]" 15 U.S.C. §§ 77k(a), 77l(a)(2). Absent an affirmative duty to disclose, an omission may create liability only if the nondisclosure renders affirmative statements misleading. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). An omission is misleading where it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also In re Pivotal Sec. Litig.*, No. 3:19-cv-03589-CRB, 2020 WL 4193384, at *11 (N.D. Cal. July 21, 2020); *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772-74 (N.D. Cal. 2017) (dismissing Section 11 claim based on *Brody*). Statements in the Offering Documents should not be read in isolation, but must be considered as a whole, read "fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).

## IV.      THE MOTION TO DISMISS SHOULD BE GRANTED

### A.      Plaintiff Lacks Standing To Assert A Section 12(a)(2) Claim

As an initial matter, Plaintiff does not have standing to assert a claim under Section 12(a)(2). "Section 12(a)(2) requires a plaintiff to plead and prove that it purchased a security *directly* from the issuer as part of the initial offering, rather than in the secondary market." *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010) (emphasis added); *see also Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1124 (N.D. Cal. 2013) ("[C]ourts, including those in the Northern District of California that have considered this issue, have found that § 12(a)(2) liability does not extend to aftermarket transactions."); *Jedrzejczyk v. Skillz Inc.*, No. 21-cv-03450-RS, 2022 WL 2441563, at *8 (N.D. Cal. July 5, 2022) ("As another court in this district has concluded, 'based on *Gustafson*, § 12(a)(2) does not extend to after market transactions.'" (quoting *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007))).

Plaintiff here did **not** purchase his shares directly from Kyverna or any of the underwriters of the IPO; rather, he purchased all of his shares on the aftermarket (most of which were purchased *after* the disclosure of the allegedly adverse trial results). Indeed, Plaintiff's own

filings make this clear. Plaintiff's certification states that he purchased his first shares on June 4, 2024 at $14.00 per share, ECF No. 21-2 at 3, ***nearly four months after*** Kyverna's IPO on February 8, 2024 and at a price that does not match the IPO price. *See* Compl. ¶ 5. That fact is sufficient to show that Plaintiff does not have standing to assert a Section 12(a)(2) claim. *See, e.g.*, *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 976 (N.D. Cal. 2010) (dismissing Section 12(a)(2) claim where "Plaintiffs' certifications of their stock purchases . . . show that none of the named plaintiffs purchased any shares on the date of the secondary offering, or at the secondary offering price[]").[5] Accordingly, Plaintiff's Section 12(a)(2) claim must be dismissed with prejudice.

### B.    The Section 11 Claim Sounds In Fraud And Is Insufficiently Pled

#### i.    Section 11 Claims Sounding In Fraud Must Be Pled With Particularity

Because Plaintiff's Section 11 claim sounds in fraud, it must be pled with particularity pursuant to Rule 9(b). While Plaintiff glibly attempts to disclaim allegations of fraud, *see* Compl. ¶ 10, such a disclaimer does not affect the requirement to plead in accordance with Rule 9(b) if the claim sounds in fraud. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) ("[Plaintiff] argues that it specifically disclaimed any allegations of fraud with respect to its Section 11 claims. These nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud[.]"). Rather, the appropriate inquiry is whether "the complaint allege[s] a unified course of fraudulent conduct . . . ." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) (alteration in original). "Rule 9(b) serves to give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints 'as a pretext for the discovery of unknown wrongs,' to protect professionals from the harm that comes from being subject to fraud charges, and to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *In re Stac*, 89 F.3d at 1405 (citation omitted) (holding that Rule 9(b) applied to Section 11 claim).

Here, Plaintiff's essential allegations can be summarized as follows:

---

[5] Nor does the original named Plaintiff, Angelo Rondini, have standing to bring a Section 12(a)(2) claim. *See* ECF No. 1 at 20 (showing that Mr. Rondini also purchased his shares nearly four months after the IPO, on June 6, 2024, and also at a non-IPO price).

- 8 -

- Defendants "needed" positive clinical trial results "to have . . . a successful IPO" and "any indication in the clinical results" that were not positive "would have called into question the IPO itself" such that Defendants concealed such adverse results from the market. Compl. ¶ 64.

- Defendants "locked down" (*i.e.*, concealed and controlled the disclosure of) negative clinical trial results, holding them "pretty tightly" "within Kyverna, with the information having been 'held between four or five people' at the Company who were all executives." *Id*. ¶¶ 68, 69.

- Despite having negative results "known and/or available" to them, Defendants prepared Offering Documents that "contained materially false and misleading statements" and "omitted material facts necessary to make the statements contained therein not misleading." *Id*. ¶¶ 85-88.

- Defendants "belatedly disclosed" the negative results only after the IPO. *Id*. ¶ 73.

Put together, the allegations of the Complaint suggest a theory that Defendants, having learned of adverse clinical results, decided to "lock[] down" the information and, driven by the desire to have a successful IPO, prepared "materially false and misleading" Offering Documents. Such allegations are clearly fraud-based and must be pleaded with particularity. *See In re Orange 21 Inc. Sec. Litig.*, No. 05 CV 0595 JM (BLM), 2006 WL 8455352, at *2 (S.D. Cal Mar. 30, 2006) (applying Rule 9(b) pleading standards to Section 11 claim and dismissing complaint where plaintiff's "allegations amount to a theory that [d]efendants intentionally withheld information in order to guarantee a successful IPO").

### ii.     Plaintiff Does Not Meet Rule 9(b)'s Pleading Standards

Here, Plaintiff fails to allege falsity with the particularity required by Rule 9(b). "[T]o properly allege falsity, a securities fraud complaint must . . . 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed.'" *In re Arrowhead Pharms., Inc. Sec. Litig.*, 782 F. App'x 572, 574 (9th Cir. 2019) (quoting *In re Rigel*, 697 F.3d at 877). Plaintiff does not do so.

- 9 -

As discussed in more detail below, Plaintiff's basis for alleging falsity appears to be entirely grounded in purported statements from unnamed former Kyverna employees. Plaintiff fails to show that any of these former employees would actually have knowledge of the facts they allege, and none provides specific information regarding the purportedly "known and/or available" clinical data that actually indicated any supposedly negative results. Indeed, *inter alia*, these former employees do not identify (1) when such events occurred, (2) when such information became known and/or available to Defendants, or (3) whether such data was validated or checked by Kyverna as the trial sponsor. *See* Compl. ¶¶ 68-69, 72; Prospectus, Kaewert Decl., Ex. B at 70. Plaintiff thus does not meet the Rule 9(b) particularity requirements and the Complaint should be dismissed. *In re Arrowhead*, 782 F. App'x at 574.

### C.    Plaintiff's Puzzle Pleading Dooms His Entire Complaint

In addition to failing to meet Rule 9(b)'s pleading requirements, the Complaint is "puzzle pleaded" and should be dismissed on that basis alone. "Courts may dismiss cases for 'puzzle pleading,' where the complaint 'recite[s] lengthy statements attributed to the defendants, followed by . . . a generalized list of omissions that were required to make the statements not misleading.'" *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1274 (N.D. Cal. 2019) (citation omitted). "In a puzzle pleading, the plaintiffs have left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading." *Primo*, 940 F. Supp. 2d at 1111 (internal quotation marks omitted) (citation omitted). "Courts recognize that such puzzle-style complaints are an unwelcome and wholly unnecessary strain on defendants and the court system." *Id.* at 1112 (internal quotation marks omitted) (citation omitted) (dismissing complaint containing Section 11 claim in its entirety because it was puzzle pleaded); *see also In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2019 WL 3817849, at *10 (N.D. Cal. Aug. 14, 2019) (dismissing Section 11 claim because it was puzzle pleaded). "[I]t is Plaintiffs', not Defendants' burden, to identify the misleading statement and link each one to the facts that establish that the statement was false or misleading when made." *In re Cisco Sys. Inc. Sec. Litig.*, No. C 11-1568 SBA, 2013 WL 1402788, at *6 (N.D. Cal. Mar. 29, 2013); *see also Align Tech*, 417 F. Supp. 3d at 1275 ("By

- 10 -

failing to articulate *exactly* which statements Plaintiff asserts to be false or misleading, Plaintiff in effect insulates the Complaint from review[.]").

That is exactly what Plaintiff has done here. For example, Plaintiff conclusorily states that the "Offering Documents contained the following false and misleading risk factors" and then inserts a 30-line block quote from one of the Offering Documents (without even specifying which Offering Document).[6] Compl. ¶ 91; *see also* ¶¶ 47-63 (summarizing and quoting trial results). Plaintiff then claims that these risk factors "had become materially false and misleading by this time because Defendants framed them as merely hypothetical risks that 'could' come to pass, when in reality they were already occurring." *Id*. ¶ 92. But Plaintiff does not specifically identify which risk disclosures are allegedly false, and does not articulate the reason(s) why they are false. Such a pleading style does not comply with Rule 8(a), and the Complaint must be dismissed. *See In re Cisco*, 2013 WL 1402788, at *5.

**D.**    **Defendants Cannot Be Liable For Accurately Reporting Information**

Plaintiff also claims that statements in the Offering Documents about "Patient 1's response to KYV-101" were false and misleading. Compl. ¶¶ 86-87. But Plaintiff does not actually allege that any of the historical clinical data provided by Defendants in the Offering Documents was false. *See id*. ¶¶ 54-63. And accurate reporting of historical data alone cannot form the basis for a Section 11 claim. *See In re Dropbox Sec. Litig.*, No. 19-cv-06348-BLF, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020) (dismissing Section 11 claim and noting that "[c]ourts in this district have repeatedly refused to find disclosure of accurate historical data misleading[]"); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998) ("Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future."); *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016) ("'[D]isclosure[s] of accurate historical data accompanied by general statements of optimism' . . . are not actionable.") (quoting *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1483 (N.D. Cal. 1992) (dismissing Section 11 claim, among others)). This holds

---

[6] Plaintiff bolds approximately half the text for emphasis but does not indicate the significance of the emphasized text.

true for accurately reporting results of scientific studies.  *See Padnes v. Scios Nova Inc.*, No C 95-1693 MHP, 1996 WL 539711, at *5 (N.D. Cal. Sept. 18, 1996) (dismissing securities fraud complaint with prejudice where defendant accurately reported results of scientific study).  Even where accurate past data is "unrepresentative of what was actually occurring currently," it is still not actionable.  *Fisher v. Acuson Corp.*, No. C93-20477RMW(EAI), 1995 WL 261439, at *9 (N.D. Cal. Apr. 26, 1995) ("accurate information about the past [does not] . . . mislead an investor into thinking that the trend [will] continue").

Moreover, Defendants even qualified that the data presented was that "available as of December 31, 2023" (Compl. ¶ 54) and provided extensive disclosures identifying that additional clinical trial data could become available that would affect the prospects of Kyverna.  *See, e.g.*, Compl. ¶ 91 (quoting risk factor that data "*may change as more patient data become available and are subject to audit and verification procedures that could result in material changes in the final data.*" (italics in original)).  In other words, Defendants were clear in alerting the market that they were reporting data only as of a certain date, and that data that would be validated (*i.e.*, "audit and verification procedures") and available after December 31, 2023 could change.[7] Further, as the Complaint acknowledges, the patient who purportedly experienced a "relapse" was discontinuing the immunosuppressants and only received half of the target dose of KYV-101. Compl. ¶¶ 59, 75.  So disease recurrence in a patient who was receiving a sub-therapeutic dose and discontinuing an immunosuppressive steroid regimen would actually confirm or provide support for target dosage, and Plaintiff's assertion that the June 14, 2024 presentation allegedly disclosed "adverse information" is unsupported.  *See Id*. ¶¶ 74-77; *see also Fisher*, 1995 WL 261439, at *9.

Finally, Plaintiff has not even pleaded the existence of any "adverse information" that was omitted.  *See, e.g.*, Compl. ¶¶ 56, 88-91, n.4.  Setting aside that Plaintiff has not pleaded facts indicating that any negative data was known or available to Defendants at the time (*see* Section

---

[7] Moreover, the data presented in the Offering Documents actually did show a reversal in the trends of certain biomarkers (*i.e.*, the C3 and C4 Complement levels) in Patient 1, which Kyverna warned "may be associated with higher disease activity."  *See* Amended Registration Statement, Ex. B, at 136; Compl. ¶ 57 (reproducing the data).

IV.E., *infra*), Plaintiff twists the phrase "adverse information" or "adverse events" to fit his narrative. While Plaintiff calls such data "unfavorable changes to a participant's condition[,]" (Compl. ¶ 56 n.4), the FDA considers "adverse" events to include only "adverse . . . medical occurrence[s] associated with the use of a drug in humans[.]" 21 C.F.R. § 312.32(a); *see also Matrixx Initiatives,* 563 U.S. at 39 n.5 (noting "[a]dverse drug experience" as "[a]ny adverse event associated with the use of a drug in humans, whether or not considered drug related" (quoting 21 C.F.R. § 314.80(a) (2010))). Adverse events are distinguishable from a patient suffering a disease recurrence (and here, again, Patient 1 was on a sub-therapeutic dosage treatment protocol and received half of the normal dose of KYV-101). *See In re Rigel*, 697 F.3d at 872, 880 n.8 (providing examples of adverse events as distinguished from relapse, and noting that "not all adverse events would be material and, more importantly, that not all material adverse events would have to be disclosed"); Compl. ¶ 75; Kaewert Decl., Ex. D.

### E.     Plaintiff's Confidential Witnesses Do Not Establish Falsity

Plaintiff's attempts to use the statements of three unnamed witnesses to try to bolster his claims are a non-starter. In order to rely on allegations from such confidential witnesses to state a claim, Plaintiff must pass two hurdles. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). "First, the confidential witnesses . . . must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of" falsity. *Id.* Plaintiff falls woefully short of this standard. In fact, the Complaint hardly provides any details of the Former Employee ("FE") confidential witnesses #1-3, let alone sufficient allegations to render their allegations reliable. Instead, Plaintiff describes each FE in vague terms, eschewing specific details or any context that would allow the Court to assess the basis for their personal knowledge of their allegations and, thus, the witnesses' reliability.

For example, Plaintiff relies on the statements of FE #1 and FE #2 to attempt to "confirm[] that KYSA-1's Patient 1 had relapsed after treatment." Compl. ¶ 68. However, the Complaint provides no information about the role of FE #1 beyond the fact that FE #1 was "a

- 13 -

former project manager in clinical operations for the KYSA-1 trial during the summer of 2023 through mid-2024." *Id*. By failing to identify FE #1's duties and responsibilities, allegations as to FE #1 fail to meet the "bare minimum" requirement where "the Ninth Circuit requires that the complaint describe the confidential witnesses with a large degree of specificity, including the witnesses' job description and also his or her responsibilities." *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2020 WL 2793463, at *15 (N.D. Cal. May 29, 2020) (internal quotation marks omitted); *see also Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037-38 (N.D. Cal. 2012) (finding confidential witness statements unreliable where "the TAC does not explain what a Senior Technology Engineer does and why someone in that position would have knowledge about [the product at issue.]"), *aff'd* 561 F. App'x 598 (9th Cir. 2014).

Similarly, FE #2 is alleged to have been a "medical science liaison" who joined Kyverna during "the first half of 2024" and "handled developing and executing strategies to support bringing Kyverna's treatments to the market." Compl. ¶ 69. Beyond this, there is a glaring lack of detail about how FE #2 supposedly learned that "'Patient #1' in [Kyverna's] presentations was the same patient who had been part of the KYSA-1 study who had relapsed" or the speculation that "Kyverna's management must have had [sic] held onto this information 'pretty tightly'[,]"[8] particularly given that it is not even clear if FE #2 was employed by Kyverna before the IPO. *Id*. Such conclusory allegations are insufficient under the *Zucco* standard.

Furthermore, FE #2's knowledge about the time frame of Patient 1's alleged relapse is based on vague hearsay, asserting only that FE #2 purportedly "spoke with someone in Clinical Operations . . . who advised FE #2 that the relapse had occurred before FE #2 joined the Company." *Id*. FE #2's further opining that "information about the relapse was the kind of information that normally would be shared with FE #2" equally lacks the requisite specificity, reliability, and personal knowledge required under this standard. *Id*.; *see In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZx), 2009 WL 2767670, at *11 (C.D. Cal. Aug. 21, 2009) ("[T]he

---

[8] Plaintiff's vague description of holding the information "pretty tightly" is unexplained and leaves Defendants unable to identify exactly which, if indeed any, Defendants are alleged to have known this information prior to the IPO. Also, under GCP, it is appropriate to limit access to data prior to validation.

- 14 -

second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud."); *Sgarlata v. Paypal Holdings, Inc.*, 409 F. Supp. 3d 846, 857 (N.D. Cal. 2019) (considering hearsay when weighing reliability of a former employee's statements), *aff'd sub nom. Eckert v. Paypal Holdings, Inc.,* 831 F. App'x 366 (9th Cir. 2020); *Zucco Partners*, 552 F.3d at 997 n.4 (same).

Finally, Plaintiff's description of FE #3 fares no better under this exacting standard. The Complaint provides that FE #3 is alleged to have been "a Clinical Trial Manager at Kyverna from August 2023 to June 2024 who oversaw operations for the KYSA-1 trial" and that "[o]ne of FE #3's duties was to ensure that data collected from clinical trial patients by the study sites would be transmitted to Kyverna in a prompt and timely manner." Compl. ¶ 72. Yet Plaintiff does not explain how, by whom, or when such data was communicated and provides no other detail that explains or supports any allegations that test results were somehow "immediately" available to Kyverna or to whom at Kyverna such results would have been made available.[9] *See McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1054 (N.D. Cal. 2019) (finding confidential witness unreliable where "there are no facts explaining . . . whether [the confidential witness] was in a position to be personally knowledgeable to be able to assert that everyone 'from the CEO on down' was aware of problems with the unbuilding of product and support").

Instead, FE #3 makes vague and speculative assertions about the process behind availability of test results at Kyverna—as a whole—based on FE #3's own opinion of when results should have been made available. FE #3 makes the following conclusory assertions: local labs "would typically" have results within 24 hours of having received the patient samples from the clinical trial study site; it "could take" roughly a week for data to be entered into the system; "it was not uncommon" to see results more quickly; and opines on circumstances "where Kyverna might have" to take extra steps in order to ensure such information was current. Compl. ¶ 72. All of FE #3's accounts lack the "specific[ity] in time, context, and details" required for FE #3's allegations to be reliable. *See Huang v. Higgins*, No. 17-cv-04830-JST, 2019 WL 1245136,

---

[9] Moreover, not all results from even the same test period are available at once, as certain assays take longer to perform and/or validate than others.

- 15 -

at *7 (N.D. Cal. Mar. 18, 2019) (collecting cases).  Furthermore, these allegations ignore that even if such testing data existed and was available to some individuals at Kyverna (which Plaintiff concedes "could take roughly a week" to be entered into Kyverna's system (Compl. ¶ 72)), such data must still be validated.  *See, e.g.*, GCP § 5.1.3 ("Quality control should be applied to each stage of data handling to ensure that all data are reliable and have been processed correctly."); Compl. ¶ 91 (recognizing that clinical trial data was subject to "audit and verification procedures" by Kyverna).[10]

Moreover, it is not clear from the Complaint that Defendants even had received *preliminary* data regarding Patient 1's relapse prior to the IPO:  Plaintiff acknowledges both that (1) Patient 1's relapse could have occurred just one week before the IPO (Compl. ¶ 67, n.10), and (2) it took "roughly a week" for relevant patient test data to be entered into Kyverna's system (Compl. ¶ 72).  As such, Plaintiff has not pleaded facts that establish that any Defendant actually had access to any data suggesting Patient 1's purported relapse prior to the IPO.[11]

As a whole, the FE allegations fail to establish that any additional clinical data was available or known to Defendants prior to the issuance of the Offering Documents.

**F.  Defendants Did Not Fail To Disclose Information Required By SEC Regulations**

**i.  Plaintiff Fails To State A Claim For Violation Of Item 303**

Plaintiff has not stated a claim for a violation of Item 303 against Defendants.  Item 303 requires issuers to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(b)(2)(ii).  To state a claim for a

---

[10] Indeed, other plaintiffs in this District have unsuccessfully attempted to hold companies liable under the securities laws precisely *because* they presented "un-validated data" rather than following the "requirement that clinical trial data be validated, collected and analyzed before being presented publicly[.]"  *See In re Nektar Therapeutics*, No. 18-cv-06607-HSG, 2020 WL 3962004, at *14 (N.D. Cal. July 13, 2020) (internal quotation marks omitted) (holding that such allegations were vague and conclusory and failed to meet the requisite pleading requirement).

[11] The Complaint also makes a brief but entirely superficial reference to "Patient 2."  However, as in the case of Patient 1, Plaintiff pleads no facts showing that Defendants were aware of Patient 2's UPCR level increase prior to the IPO.  *See* Compl. ¶ 80.  Tellingly, the FE statements in the Complaint are devoid of any reference to Patient 2.  *See* Compl. ¶¶ 68-72.

- 16 -

violation of Item 303, a plaintiff must plead the existence of an adverse trend. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998). "A trend under item 303 requires an observed pattern that accurately reflects persistent conditions[.]" *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal 2019) (internal quotation marks omitted) (citation omitted). "Isolated" events occurring pre-IPO need not be disclosed pursuant to Item 303, even if it later becomes clear that such events were part of a trend. *Id.* at 1263-64. "As a matter of law, a two month period of time does not establish a 'trend' for purposes of the disclosures required by Item 303." *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, No. 07 Civ. 10528, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010).

Here, Plaintiffs cite only a single isolated incident of an allegedly known or available purportedly adverse result (which Defendants do not concede was "adverse" at all) occurring less than one month before the Kyverna IPO. Compl. ¶¶ 87-88. Even if it had been known to Defendants, as a matter of law, such information is not sufficient to establish an actionable "trend" under Item 303. *See In re Restoration Robotics*, 417 F. Supp. 3d at 1263-64.

### ii.    Plaintiff Fails To State A Claim For Violation Of Item 105

Similarly, Plaintiff does not allege facts sufficient to support a violation of Item 105. Item 105 requires disclosure of "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105. Where the risk disclosures provided warnings of the very circumstances of which Plaintiff complains, no Item 105 claim can stand. *In re Pivotal*, 2020 WL 4193384, at *8; *Golubowski v. Robinhood Mkts., Inc.*, No. 21-cv-09767-EMC, 2023 WL 1927616, at *7–8 (N.D. Cal. Feb. 10, 2023).

Here, Defendants disclosed the very risks involved with the clinical trials that Plaintiff complains of. Among other things, in the Kyverna Offering Documents, Defendants disclosed:

- "Our product candidates are susceptible to the risks of failure inherent at any stage of product development, including the appearance of unexpected adverse events or failure to achieve primary endpoints in clinical trials." (Amended Registration Statement, Kaewert Decl., Ex. B at 18; Prospectus, Kaewert Decl., Ex. C, at 18.)
- "We cannot be certain that our current or any future product candidates will be

- 17 -

successful in clinical trials or receive regulatory approval." (Amended Registration Statement, Kaewert Decl., Ex. B at 18; Prospectus, Kaewert Decl., Ex. C, at 18.)

- "***Preclinical and clinical development involves a lengthy and expensive process, with an uncertain outcome, and results of earlier studies and trials may not be predictive of future trial results.***" (Amended Registration Statement, Kaewert Decl., Ex. B at 30 (emphasis in original); Prospectus, Kaewert Decl., Ex. C at 30 (emphasis in original).)

- "All of our product candidates are either in preclinical or clinical development and their risk of failure is high." (Amended Registration Statement, Kaewert Decl., Ex. B at 30; Prospectus, Kaewert Decl., Ex. C at 30.)

- "Clinical testing can take many years to complete, and its outcome is inherently uncertain. The results of preclinical studies and early clinical trials of our product candidates may not be predictive of the results of later-stage clinical trials and results in one indication may not be predictive of results to be expected for the same product candidate in another indication." (Amended Registration Statement, Kaewert Decl., Ex. B at 30; Prospectus, Kaewert Decl., Ex. C at 30.)

- "There is typically a high rate of failure of product candidates proceeding through clinical trials, and failure can occur at any time during the clinical trial process. Most product candidates that commence clinical trials are never approved as products and there can be no assurance that any of our current or future clinical trials will ultimately be successful or support the approval of our current or any future product candidates." (Amended Registration Statement, Kaewert Decl., Ex. B at 30; Prospectus, Kaewert Decl., Ex. C at 30.)

- "***Interim, top-line and preliminary data from our clinical trials that we announce or publish from time to time may change as more patient data become available and are subject to audit and verification procedures that could result in material changes in the final data.***" (Amended Registration Statement, Kaewert

- 18 -

Decl., Ex. B at 33 (emphasis in original); Prospectus, Kaewert Decl., Ex. C at 33 (emphasis in original).)

- "From time to time, we may publicly disclose preliminary or top-line data from our preclinical studies and clinical trials, which is based on a preliminary analysis of then-available data, and the results and related findings and conclusions are subject to change following a more comprehensive review of the data related to the particular study or trial.  We also make assumptions, estimations, calculations and conclusions as part of our analyses of data, and we may not have received or had the opportunity to fully and carefully evaluate all data.  As a result, the top-line or preliminary results that we report may differ from future results of the same studies, or different conclusions or considerations may qualify such results, once additional data have been received and fully evaluated.  ***Top-line data also remain subject to audit and verification procedures that may result in the final data being materially different from the preliminary data we previously published***.  As a result, top-line data should be viewed with caution until the final data are available."  (Amended Registration Statement, Kaewert Decl., Ex. B at 33 (emphasis added); Prospectus, Kaewert Decl., Ex. C at 33 (emphasis added).)

- "From time to time, we may also disclose interim data from our preclinical studies and clinical trials.  Interim data from clinical trials that we may complete are subject to the risk that one or more of the clinical outcomes may materially change as patient enrollment continues and more patient data become available or as patients from our clinical trials continue other treatments for their disease.  Adverse differences between preliminary or interim data and final data could significantly harm our business prospects."  (Amended Registration Statement, Kaewert Decl., Ex. B at 33; Prospectus, Kaewert Decl., Ex. C at 33.)

- "In addition, the information we choose to publicly disclose regarding a particular study or clinical trial is based on what is typically a significant volume of data and other information, and you or others may not agree with what we determine is

- 19 -

material or otherwise appropriate information to include in our disclosure." (Amended Registration Statement, Kaewert Decl., Ex. B at 33; Prospectus, Kaewert Decl., Ex. C at 33.)

- "Failure can occur at any time during the clinical trial process. The results of preclinical studies and early clinical trials of our product candidates may not be predictive of the results of later-stage clinical trials. In addition, initial success in clinical trials may not be indicative of results obtained when such trials are completed. There is typically an extremely high rate of attrition from the failure of product candidates proceeding through clinical trials." (Amended Registration Statement, Kaewert Decl., Ex. B at 35-36; Prospectus, Kaewert Decl., Ex. C at 35-36.)

- "Autoimmune diseases are often lifelong chronic conditions, raising the possibility that some patients may experience relapse and require retreatment, even after achieving a meaningful clinical response." (Amended Registration Statement, Kaewert Decl., Ex. B at 129; Prospectus, Kaewert Decl., Ex. C at 127.)

Put simply, Defendants clearly emphasized that the risk of failure in clinical trials was high, and that initially positive results are not necessarily predictive of future success. Plaintiff cannot claim that Kyverna's risk disclosures were not adequate.

**G.    Without an Underlying Violation, No Section 15 Liability Attaches**

Section 15 requires an underlying primary violation of the securities laws. Where no such primary violation has been adequately pleaded, a Section 15 claim must be dismissed. *See In re Rigel*, 697 F.3d at 886.

///

///

///

///

///

///

- 20 -

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Complaint should be dismissed in its entirety.

DATED: June 26, 2025                              PAUL HASTINGS LLP

By: */s/ Edward Han*
   EDWARD HAN (SB# 196924)

*Attorneys for Defendants*
*Kyverna Therapeutics, Inc., Ian Clark,*
*Fred E. Cohen, Brian Kotzin, Steve Liapis,*
*Beth Seidenberg, Daniel K. Spiegelman,*
*Ryan Jones, Dominic Borie, Karen Walker,*
*Peter Maag, and James Chung*

- 21 -