CHRISTOPHER HAROLD MCGRATH (SB# 149129)
chrismcgrath@paulhastings.com
D. SCOTT CARLTON (SB# 239151)
scottcarlton@paulhastings.com
BRIAN SEARLES KAEWERT (SB# 305140)
briankaewert@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone:    (650) 320-1800
Facsimile:    (650) 320-1900

*Attorneys for Defendants*
*Kyverna Therapeutics, Inc., Ian Clark, Fred E. Cohen,*
*Brian Kotzin, Steve Liapis, Beth Seidenberg, Daniel K.*
*Spiegelman, Ryan Jones, Dominic Borie, Karen Walker,*
*Peter Maag, and James Chung*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ANGELO RONDINI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KYVERNA THERAPEUTICS, INC., J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, LEERINK PARTNERS LLC, WELLS FARGO SECURITIES, LLC, PETER MAAG, RYAN JONES, DOMINIC BORIE, JAMES CHUNG, KAREN WALKER, IAN CLARK, FRED E. COHEN, BRIAN KOTZIN, STEVE LIAPIS, BETH SEIDENBERG, and DANIEL K. SPIEGELMAN,<br><br>Defendants. | CASE NO. 5:24-cv-08869-PCP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:    Hon. P. Casey Pitts<br>Date:     December 11, 2025<br>Time:     10:00 a.m.<br>Ctrm:     8 |

## <u>TABLE OF CONTENTS</u>

**Page**

I. Introduction ...................................................................................................... 1

II. The Motion To Dismiss Should Be Granted ...................................................... 2

    A. Aftermarket Purchasers Like Plaintiff Cannot Maintain a Section 12(a)(2) Claim ......................................................................................................... 2

    B. The Section 11 Claim Sounds In Fraud And Is Insufficiently Pled ........................ 4

        i. Plaintiff Concedes that Rule 9(b) Applies to Section 11 Claims When They Sound in Fraud. ................................................................... 4

        ii. Plaintiff's Complaint Sounds in Fraud. ........................................................... 5

        iii. Plaintiff Does Not Meet Rule 9(b)'s Pleading Standards. ........................... 6

        iv. Plaintiff Impermissibly Puzzle Pleads. ........................................................... 6

        v. Defendants Cannot Be Liable for Accurately Reporting Information. ........ 7

        vi. Plaintiff's Confidential Witnesses Rely on Hearsay and Speculation Insufficient to Plead Falsity. ...................................................................... 8

    C. Defendants Did Not Fail To Disclose Information Required By SEC Regulations ............................................................................................... 11

    D. With No Underlying Liability, No Section 15 Claim Can Stand ........................... 12

III. Conclusion ...................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boston Ret. Sys. v. Uber Techs., Inc.*,
No. 19-cv-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ................................... 6, 7

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ............................................................................................... 8

*Immanuel Lake v. Zogenix, Inc.*,
No. 19-cv-01975-RS, 2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ................................... 2

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ............................................................................................... 11

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................................. 4

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) .................................................................................... 5, 6

*In re Cisco Sys., Inc. Sec. Litig.*,
No. C-11-1568-SBA, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ................................. 7

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991), *amended on denial of reh'g* (9th Cir. Dec. 6,
1991) .................................................................................................................................. 8

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................................. 4

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........................................................................................... 7

*In re Glob. Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003) ............................................................................... 3

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ............................................................................................. 2

*In re ON24, Inc. Sec. Litig.*,
No. 21-cv-08578-YGR, 2023 WL 7449838 (N.D. Cal. July 7, 2023) ................................. 4

*In re Orange 21 Inc. Sec. Litig.*,
No. 05-cv-0595-JM (BLM), 2006 WL 8455352 (S.D. Cal. Mar. 30, 2006) ...................... 5, 6

*In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019) ............................................................ 11

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012).............................................................................. 12

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996).......................................................................... 4, 5

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................................ 3

*Jedrzejczyk v. Skillz Inc.*,
    No. 21-cv-03450-RS, 2022 WL 2441563 (N.D. Cal. July 5, 2022) ...................... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)............................................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ............................................................................................. 8

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ........................................................... 3, 7

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009).............................................................................. 6

*Safron Cap. Corp. v. Leadis Tech., Inc.*,
    274 F. App'x 540 (9th Cir. 2008) ........................................................................ 4

*Sodha v. Golubowski*,
    No. 24-1036, 2025 WL 2487954 (9th Cir. Aug. 29, 2025)................................... 11

*Sundaram v. Freshworks Inc.*,
    No. 22-cv-06750-CRB, 2023 WL 6390622 (N.D. Cal. Sept. 28, 2023)................. 3

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003).............................................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)................................................................................ 9

**Other Authorities**

17 C.F.R. § 229.105 ................................................................................................ 11

17 C.F.R. § 229.303(b)(2)(ii) ............................................................................. 11, 12

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiff's Opposition (the "Opposition" or "Opp.")[1] confirms this case never should have been filed.  For the Section 12(a)(2) claim, Plaintiff lacks standing as a matter of black-letter law because he did not purchase Kyverna securities in the offering.  This Court has repeatedly dismissed Section 12(a)(2) claims brought by aftermarket purchasers like Plaintiff.  Plaintiff does not deny the predicate fact that he did not purchase in the IPO, relies on out-of-circuit authority in an attempt to salvage standing, and ignores this Court's on-point decisions that compel dismissal of his Section 12(a)(2) count.

Plaintiff's Section 11 theory fares no better.  His Complaint hinges on a story that Kyverna executives, motivated to ensure a successful IPO, "locked down" adverse information until after the offering.  That is a fraud narrative, not a negligence case.  Having chosen that theory, Plaintiff must satisfy Rule 9(b).  He does not come close.  Rather than identify with particularity who said what, when, where, and why it was false when said, Plaintiff pastes block quotations, sprinkles in emphasis marks, and leaves the Court and Defendants to guess which words are supposedly actionable.  Rule 9(b) requires specificity, not atmospherics.

Moreover, the factual engine that is supposed to propel his theory—confidential-witness statements—stalls on inspection.  None of these statements is tethered to personal knowledge of what Kyverna actually knew before the IPO or when, and two expressly rely on secondhand accounts.  The third offers only generalized process descriptions about how data might flow in a clinical program, not concrete data points linked to the offering date.  Even when considered collectively, those statements do not plead falsity.  Courts in this Circuit reject securities claims built on hearsay, conjecture, and post hoc assumptions.  The Opposition's primary move—to invite the Court to infer that because information was later disclosed it must have been known earlier—is precisely the sort of unwarranted deduction Rule 8 forbids.

Nor do Plaintiff's regulatory theories rescue the pleading.  Item 105 requires disclosure of

---

[1] Terms not otherwise defined herein shall have the meaning attributed to them in Kyverna's Motion to Dismiss (the "Motion").

the material factors that make the investment risky; it does not convert accurate risk warnings into actionable misstatements because a plaintiff later asserts that some risk had already "materialized."  The Ninth Circuit has made clear that mischaracterizing a past harm as a future risk, standing alone, does not violate Item 105.  Item 303 demands disclosure of known trends or uncertainties reasonably likely to materially affect results.  Isolated, unverified patient-level data allegedly arising days before an offering is not a "trend," and Plaintiff never explains how such data rendered any identified statement in the Offering Documents misleading at the time.

Equally important, Plaintiff never disputes that the Offering Documents accurately reported historical clinical results.  He instead asks the Court to treat the subsequent June 2024 disclosure as proof that Kyverna necessarily knew the same information immediately before the IPO.  That is pure speculation, not a well-pleaded fact.  The securities laws do not impose liability for failing to anticipate the future, for declining to publish unverified interim datapoints, or for declining to parrot rumors circulating among non-decisionmakers.  Moreover, investors understand that early-stage clinical trials are inherently risky and setbacks are to be expected.[2] "[W]ere plaintiffs' version of falsity the law, a pharmaceutical company could be sued for securities fraud each and every time it received a [setback]." *Immanuel Lake v. Zogenix, Inc.*, No. 19-cv-01975-RS, 2020 WL 3820424, at *9 (N.D. Cal. Jan. 27, 2020).

When the noise is stripped away, nothing actionable remains:  no standing under Section 12(a)(2); a Section 11 claim that sounds in fraud but does not satisfy Rule 9(b); no particularized statement-by-statement falsity; confidential-witness allegations that supply neither personal knowledge nor timing; and Item 105/303 theories that misstate the governing standards.  With no primary violation, the derivative Section 15 claim necessarily falls.  The Complaint should be dismissed in full.

**II.     THE MOTION TO DISMISS SHOULD BE GRANTED**

**A.     Aftermarket Purchasers Like Plaintiff Cannot Maintain a Section 12(a)(2) Claim**

Plaintiff's argument that he may maintain a Section 12(a)(2) claim on behalf of the class

---

[2] *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022).

despite the fact that he did not purchase any of his shares directly in the IPO, *see* Opp. at 24-25, flies in the face of this Court's jurisprudence. Unsurprisingly, Plaintiff relies almost entirely on out-of-circuit case law. Only *one* of those out-of-circuit cases, *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206 (S.D.N.Y. 2003), arose at the motion to dismiss stage.[3] And, significantly, that one case did not even involve a Section 12(a)(2) claim.

This Court has repeatedly dismissed Section 12(a)(2) claims at the motion to dismiss stage because the named plaintiffs did not purchase the security directly in the offering and therefore lacked statutory standing. *See, e.g.*, *Jedrzejczyk v. Skillz Inc.*, No. 21-cv-03450-RS, 2022 WL 2441563, at *8 (N.D. Cal. July 5, 2022) (stating that plaintiffs "lack statutory standing for the Section 12(a)(2) claim" when they "do not allege that they purchased directly in the secondary offering"); Mot. at 7-8.[4] That is the situation presented here. Plaintiff seeks to distinguish Defendants' cited cases (only one of which Plaintiff even mentions) by stating that the named plaintiffs in those cases "never bought the securities at issue." Opp. at 25. Not so. The named plaintiffs in those cases did purchase the securities, but they did so in the *aftermarket* rather than directly in the offering at issue. *See, e.g.*, *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1125 (N.D. Cal. 2013) (describing certifications reflecting dates that named plaintiffs purchased securities at issue). The fact that those plaintiffs purchased in the aftermarket is precisely the reason the Section 12(a)(2) claims were dismissed.

Plaintiff contends that Defendants' standing arguments "raise at most a premature issue concerning typicality and adequacy under Rule 23." Opp. at 25. Plaintiff ignores this Court's rejection of the same contention in the past, including in a case cited in the opening and opposition briefs. *See In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) (rejecting contention "that the Court should defer the standing inquiry until the class certification stage" because "standing 'is a jurisdictional element that must be

---

[3] The other cases addressed lead plaintiff motions and class certification motions.

[4] Plaintiff's own counsel previously conceded (on behalf of different plaintiff) that aftermarket purchasers lack standing to pursue a Section 12(a)(2) claim. *See Sundaram v. Freshworks Inc.*, No. 22-cv-06750-CRB, 2023 WL 6390622, at *3 n.5 (N.D. Cal. Sept. 28, 2023).

satisfied prior to class certification'") (citation omitted).

Plaintiff cannot and does not dispute that he did not purchase his shares directly in Kyverna's IPO. Recognizing this deficiency, Plaintiff argues that "the PSLRA does not require that a lead plaintiff in a consolidated securities action have standing to bring every available cause of action alleged by a class." Opp. at 24. As Plaintiff's own case from this Circuit makes clear, however, that statement is correct "so long as lead plaintiffs 'identify and include named plaintiffs who have standing.'" *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008).[5] Plaintiff did not do so, and this case does not involve any plaintiffs—whether lead plaintiffs or named plaintiffs—with statutory standing with respect to Section 12(a)(2). As such, the Section 12(a)(2) claim should be dismissed with prejudice.[6]

### B.   The Section 11 Claim Sounds In Fraud And Is Insufficiently Pled

#### i.   Plaintiff Concedes that Rule 9(b) Applies to Section 11 Claims When They Sound in Fraud.

Plaintiff does not dispute that "[t]he particularity requirements of Rule 9(b) apply to claims brought under [S]ection 11 when . . . they are grounded in fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir. 1996). Where the allegations in a complaint do not use the word "fraud" to describe a defendant's actions, a complaint "sounds in fraud" or is "grounded in fraud," and Rule 9(b) nonetheless applies if the complaint relies entirely on a "unified course of fraudulent conduct." *Safron Cap. Corp. v. Leadis Tech., Inc.*, 274 F. App'x 540, 541 (9th Cir. 2008) (citing *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1105-06, 1108 (9th Cir. 2003)); *In re ON24, Inc. Sec. Litig.*, No. 21-cv-08578-YGR, 2023 WL 7449838, at *8 n.3 (N.D. Cal. July 7, 2023) (Rule 9(b) applies to Section 11 claim sounding in fraud).

---

[5] Further, the *Countrywide* court *dismissed* the Section 12(a)(2) claim. *Id*. at 1183.

[6] In addition to problems with Plaintiff's standing, the Section 12(a)(2) claim should also be dismissed as a result of the same pleading deficiencies as Plaintiff's Section 11 claim. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010) (dismissing Section 12(a)(2) claim for the same failure "to allege, as a predicate, the existence of material misstatements and/or omissions in connection with the IPO" that supported dismissal of the Section 11 claim).

ii.    **Plaintiff's Complaint Sounds in Fraud.**

Application of Rule 9(b) is appropriate here—where the gravamen of Plaintiff's allegations is that Kyverna executives, needing positive clinical trial results to have a successful IPO, learned of adverse clinical data but kept it secret until after the IPO—and Plaintiff's protestations to the contrary are self-serving but unconvincing.

First, Plaintiff suggests that his own allegation that Kyverna "needed" positive clinical trial results "to have . . . a successful IPO," Compl. ¶ 64, somehow "confirms the materiality" of the purportedly misleading data. Opp. at 10. That logic is circular: data does not become material simply because it was omitted.[7] The Complaint advances a theory that Kyverna's executives deceived investors by purposefully withholding supposedly material data for financial gain.

Second, Plaintiff tries to distance himself from his own allegation that Kyverna executives "locked down" and held "tightly" purportedly adverse data. *See* Opp. at 10. The only purpose of such allegations is to claim intentional wrongdoing; otherwise, alleging that executives intentionally concealed information—even from other employees—would be beside the point. Plaintiff cannot ignore his own fraud narrative.[8]

Third, while allegations that data was "known and/or available to Defendants" and "belatedly disclosed" do not, standing alone, make a claim sound in fraud, Compl. ¶¶ 73, 87, read together with the IPO-motive concealment theory, they do. *See In re Stac*, 89 F.3d, at 1405.

The contrast between *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 545–46 (N.D. Cal. 2009) (no allegation of knowing or intentional conduct) and *In re Orange 21 Inc. Sec. Litig.*, No. 05-cv-0595-JM (BLM), 2006 WL 8455352, at *2 (S.D. Cal. Mar. 30, 2006) (Rule 9(b)

---

[7] Plaintiff also claims that the word "concealed" does not appear in his Complaint. *See* Opp. at 10:2-4. Plaintiff is wrong. *See* Compl. ¶ 116.

[8] Plaintiff misses the mark on the Kyverna Defendants' point that the purportedly omitted data has not been subject to Kyverna's audit and verification procedures. Opp. at 10. Kyverna does not contend that it withheld information only because the data had not gone through audit and verification procedures; rather, the point is that any data that has not been validated by established audit or verification procedures would not need to be disclosed on an interim basis—*i.e.*, such data is not material.

REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – 5:24-CV-08869-PCP

applied to "intentionally withheld information" to "guarantee a successful IPO") is instructive. This case parallels *Orange 21*, not *Charles Schwab*:  Plaintiff alleges motive to ensure a successful IPO, Compl. ¶ 64, and intentional "lock down" of adverse information, Compl. ¶¶ 68–69.[9]  Rule 9(b) therefore applies.

### iii.    **Plaintiff Does Not Meet Rule 9(b)'s Pleading Standards.**

Because the Complaint sounds in fraud, Plaintiff must "state with particularity the circumstances constituting fraud . . . .  In other words, the complaint must set forth what is false or misleading about a statement, and why it is false."  *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks and citations omitted).

Plaintiff makes a cursory argument that his allegations in the Complaint meet such a standard, *see* Opp. at 11:20-23 (citing Compl. ¶¶ 84-94), but a review of the Complaint itself proves otherwise.  For instance, in Paragraph 89 of the Complaint, Plaintiff alleges that "undisclosed adverse data . . . rendered the disclosed results and trends in the Offering Documents false . . . [.]"  But Plaintiff does not identify (a) which "undisclosed adverse data" he refers to or (b) which "disclosed results and trends" in the Offering Documents were rendered false. *See* Compl. ¶ 89.  Such a pleading does not meet the Rule 9(b) particularity standard.

### iv.    **Plaintiff Impermissibly Puzzle Pleads.**

Plaintiff suggests that because his Complaint is only 35 pages long, it cannot be puzzle pleaded.  Brevity does not preclude puzzle pleading.  The question is whether the Complaint itself isolates the challenged statements and explains their falsity.  *See Boston Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2020 WL 4569846, at *5 (N.D. Cal. Aug. 7, 2020) (no puzzle pleading where the complaint expressly emphasized the allegedly false portions).

*Uber* is instructive.  In *Uber*, the court determined that a complaint that "may be long, confusing, and meandering, such that it is difficult to locate the main points within it" but that specifically "emphasize[d] the portions of [the offering documents] that [it] allege[d] to be false or misleading" was not impermissible puzzle pleading.  2020 WL 4569846, at *5.  Unlike *Uber*,

---

[9] By contrast, in *Charles Schwab*, there were no allegations that the defendants "knowingly" made any misrepresentation.  257 F.R.D. at 545.

REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – 5:24-CV-08869-PCP

here Plaintiff fails to identify exactly which statements he alleges are false or misleading. Take, for example, Paragraph 91 of the Complaint: Plaintiff conclusorily alleges that the "Offering Documents contained the following false and misleading risk factors" and then inserts a 30-line block quote (with a break) from one of the Offering Documents (silent as to which) and noting that "emphasis added in bold." Compl. ¶ 91. Unlike the plaintiff in *Uber*, Plaintiff here does not identify whether such emphases are intended to indicate alleged falsity. The Complaint must be dismissed as impermissibly puzzle pleaded. *See In re Cisco Sys., Inc. Sec. Litig.*, No. C-11-1568-SBA, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013) (dismissing where defendants were left to guess which statements were misleading); *Primo*, 940 F. Supp. 2d at 1112 (dismissing Section 11 claim where plaintiffs "failed to set forth a 'short and plain statement' of their claims in violation of Rule 8(a), …[and] to make their allegations 'simple, concise and direct' in violation of Rule 8(d)").

v.    **Defendants Cannot Be Liable for Accurately Reporting Information.**

Plaintiff does not dispute that the historical clinical data provided by the Kyverna Defendants in the Offering Documents was accurate, *see* Compl. ¶¶ 54-63, or that such statements, in and of themselves, do not create liability under Section 11. Opp. at 13-14. Rather, Plaintiff's claim is premised on the idea that Kyverna failed to disclose additional information that Plaintiff alleges was known or available to Kyverna. *Id.* But Plaintiff has failed to plead *facts* sufficient to support the inference that such clinical trial results that Plaintiff alleges needed to be disclosed actually were known or available to Kyverna.

Beyond the unsupported and inadequate allegations of three former employees (addressed below), Plaintiff's theory essentially amounts to "because Kyverna eventually knew, we should assume they knew immediately." *See* Opp. at 17-18. But the leap Plaintiff asks the Court to make—that because data that Kyverna disclosed in June 2024 indicated that Patient 1 had relapsed "at least a week before the IPO," Kyverna knew of the relapse before the IPO, *see* Opp. at 17—is an unreasonable and unwarranted deduction of fact. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) for the proposition that "courts are not required to accept as true

- 7 -

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

The cases that Plaintiff cites in his opposition to suggest that Kyverna's reporting of historical data was misleading are inapposite. First, just one of the eleven cases that Plaintiff cites to support his argument even involve a Section 11 claim, and in that case—*In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 517 (9th Cir. 1991), *amended on denial of reh'g* (9th Cir. Dec. 6, 1991)—the court dismissed the claim in a four-sentence section that does not discuss accurately reported information. Second, none of the cases address a theory premised on patient-level data purportedly received days before an offering. Compl. ¶ 67.

The contrast between the situation here and that in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), is instructive. In *Matrixx*, the Supreme Court held that the maker of Zicam could be liable for false statements when it persisted for months in making repeated positive statements about the outlook for Zicam, while refraining from sharing that multiple doctors had reported that their patients had lost their sense of smell, that two researchers had expressed concerns about the causal link between use of Zicam and loss of smell, and that several product liability lawsuits had been filed related to the loss of smell. *Id.* at 31-34. By contrast here, Kyverna's alleged omission is unverified clinical data for three patients that purportedly only became available to Kyverna as close as one week prior to the IPO. Compl. ¶ 67. Plaintiff's Section 11 claims should be dismissed.

vi.    **Plaintiff's Confidential Witnesses Rely on Hearsay and Speculation Insufficient to Plead Falsity.**

Confidential-witness allegations must reflect personal knowledge; secondhand reports and opinions are insufficient. *See Espy v. J2 Glob., Inc.*, 99 F.4th 527, 537 (9th Cir. 2024) (finding former employee's ("FE") assessment "undermined" where FE relied on secondhand information). Tellingly, Plaintiff avoids confronting these core deficiencies concerning the credibility concerns Defendants have raised—namely, that the Former Employee ("FE") statements on which Plaintiff relies as his sole basis for alleging that any purportedly adverse information was available to Kyverna ahead of the IPO are based on secondhand knowledge,

- 8 -

speculation, and opinions.[10]

Plaintiff conclusorily asserts—without much explanation as to FE #1 and #2—that the confidential witnesses are described with requisite particularity.  But the Complaint negates Plaintiff's assertion.  As to FE #1, Plaintiff's efforts to avoid the pertinent issues is evident.  First, Plaintiff fails to establish how FE #1's role as a "project manager in clinical operations for the KYSA-1 trial" provides a reasonable inference of *personal knowledge* of Patient 1's relapse.  FE #1's descriptions instead, show merely that FE #1 *vaguely "confirms"* Patient 1's relapse or relies on *secondhand information*, but does not in any way explain *how* FE #1 purportedly learned any of the information:

- FE #1 "confirmed that the relapse occurred in a patient enrolled in the KYSA-1 trial[.]" Compl. ¶ 68.
- "FE #1 also noted that news of the patient's relapse had been 'locked down' within Kyverna, with the information having been 'held between four or five people' at the Company who were all executives . . . those executives would have included CEO Peter Maag and Kyverna's Global Medical Director Frances Kim." *Id.*
- "FE #1 did not learn until after the fact that Patient 1 had relapsed, but recalled learning about it 'very close to the IPO.'" *Id.*

Furthermore, the only factual allegation that Plaintiff posits that FE #1 could be expected to know is that Patient 1 was in fact "treated with KYV-101 in July 2023." Opp. at 20.  However, this does not prove falsity—Kyverna's public filings disclose the same information.

It is similarly unclear how FE #2's role as a "former medical science liaison" provides a basis for personal knowledge to confirm Patient 1's relapse or when any of the Kyverna Defendants learned of such relapse.  This would hardly be within the scope of duties of a liaison

---

[10] Plaintiff asserts that the confidential witness statement reliability standard set out in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), which addressed reliability of confidential witness statements offered to establish the scienter element of a Section 10(b) claim, should not be applied here because the statements in *Zucco* went to scienter, while those here go to falsity. *See* Opp. at 19 n.13.  But Plaintiff cites no authority to suggest that the same reliability standards should not apply simply because the statements are used for the purposes of pleading falsity.

who "handled developing and executing strategies to support bringing Kyverna's treatments to the market." Compl. ¶ 69. Nevertheless, FE #2 apparently "confirmed" Patient 1 was the KYSA-1 patient who relapsed by word of mouth and speaking with *someone else* purportedly with firsthand knowledge. Importantly, the entirety of FE #2's allegations are based on secondhand information. The following statements confirm this:

- FE #2 "confirmed that the patient that Kyverna regularly referred to as 'Patient #1' in its presentations was the same patient who had been part of the KYSA-1 study who had relapsed." Compl. ¶ 69.

- "FE #2 only became aware of the relapse when Kyverna disclosed it publicly at the EULAR Conference, which FE #2 attended." *Id.*

- "After viewing Kyverna's presentation, FE #2 spoke with someone in Clinical Operations at Kyverna at the conference with first-hand knowledge of the relevant facts who advised FE #2 that the relapse had occurred before FE #2 joined the Company." *Id.*

- "FE #2 also noted that Kyverna's management must have had [sic] held onto this information 'pretty tightly,' as information about the relapse was the kind of information that normally would be shared with FE #2 given FE #2's position in medical affairs at the Company." *Id.*

Finally, Plaintiff draws attention to the description and statements of FE #3, relying on FE #3's description and duties as "Clinical Trial Manager" to claim "damning corroboration" of how Kyverna had access to patient data. Opp. at 18. A closer look reveals FE #3's statements to be neither damning nor detailed. FE #3 provides a bevy of statements regarding what could have, should have, and might have occurred under the scope of FE #3's duties "to ensure that data collected . . . would be transmitted to Kyverna." Opp. at 20-21. However, FE #3 does not identify any actual data points nor specific information beyond this hypothetical. FE #3 fails to pinpoint any specific date or instance where Kyverna had access to patient data that was withheld before the IPO.

Instead, FE #3 provides a theoretical framework based on supposition rather than

REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – 5:24-CV-08869-PCP

allegations of actual knowledge FE #3 had to prove falsity. This does not establish that defendants in fact obtained or knew of any adverse results before the IPO. For example, FE #3's statements speak to (i) when lab results *might have* been available, (ii) where the data *might have* been available, and (iii) what was *not uncommon* regarding this timing. The timing between data collection and transmittal to Kyverna is thus inherently speculative and rests on assumptions specific to FE #3.

### C.    Defendants Did Not Fail To Disclose Information Required By SEC Regulations

Plaintiff's Item 105 and Item 303 theories fail for the same reason: they depend on the unsupported premise that materially adverse clinical data was known to Kyverna before the IPO.

Item 105 requires disclosure of "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105. Plaintiff's argument is that Kyverna warned of risks that had already materialized. But "mischaracterizing a past harm as a future risk cannot, standing alone, violate Item 105." *Sodha v. Golubowski*, No. 24-1036, 2025 WL 2487954, at *16 (9th Cir. Aug. 29, 2025). Even if known adverse results had occurred (they had not), that framing alone would not state an Item 105 claim.[11]

Item 303 requires issuers to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Plaintiff pleads no particularized facts showing Kyverna knew of any disclosable "trend" or "uncertainty" pre-IPO; at most he posits isolated, unverified patient-level data allegedly arising days before the offering. *Isolated events* are not a trend. *See In re Restoration Robotics, Inc. Sec. Litig.*, 417 F.

---

[11] Plaintiff's argument that these purported omissions are actionable under *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), is not well founded. *See* Opp. at 21. In *Alphabet,* the court found defendant Alphabet's risk disclosures misleading when they failed to include mention of a potential security bug even "after the detection of Google's cybersecurity issues, after internal deliberation based on the Privacy Bug Memo, and during the growing scrutiny following the Cambridge Analytica scandal." *Alphabet*, 1 F.4th at 702. By contrast here, the allegation is that Kyverna learned of negative unverified clinical data as late as one week before the IPO. Compl. ¶ 67.

REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – 5:24-CV-08869-PCP

Supp. 3d 1242, 1263–64 (N.D. Cal. 2019).  And uncertainties not known to management are not actionable under Item 303. *See* 17 C.F.R. § 229.303(b)(2)(ii).  Even if Kyverna had received unverified adverse data from KYV-101, failing to disclose those data would not establish an actionable Item 303 trend. *See id.*

### D.    With No Underlying Liability, No Section 15 Claim Can Stand

Without an underlying Section 11 or Section 12(a)(2) claim, Plaintiff's Section 15 claim necessarily fails and must be dismissed. *See In re Rigel Pharm., Inc. Sec. Litig.,* 697 F.3d 869, 886 (9th Cir. 2012).

## III.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.  The Section 12(a)(2) claim should be dismissed with prejudice as incurable; the remaining claims should be dismissed for failure to state a claim.

DATED: September 26, 2025                PAUL HASTINGS LLP


                                         By: */s/ Christopher H. McGrath*
                                              CHRISTOPHER H. MCGRATH

                                         *Attorneys for Defendants*
                                         *Kyverna Therapeutics, Inc., Ian Clark,*
                                         *Fred E. Cohen, Brian Kotzin, Steve Liapis,*
                                         *Beth Seidenberg, Daniel K. Spiegelman,*
                                         *Ryan Jones, Dominic Borie, Karen Walker,*
                                         *Peter Maag, and James Chung*

REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT – 5:24-CV-08869-PCP